(965 P.2d 855)

No. 78,935

VALERIE M. GENTZEL, *Appellant*, v. KEITH A. WILLIAMS, *Appellee*.

—

Opinion filed October 9, 1998.

*Timothy G. Givan*, of Kansas Department of Social and Rehabilitation Services, for the appellant.

No appearance for the appellee.

Before BRAZIL, C.J., GERNON and PIERRON, JJ.

PIERRON, J.: The Kansas Department of Social and Rehabilitation Services (SRS), on behalf of Valerie M. Gentzel (formerly Valerie Williams), appeals the district court's ruling that the court had continuing exclusive jurisdiction over an Arizona order requiring Keith Williams to pay child support to Gentzel. The district court then modified the order by reducing the amount of child support. Williams has not favored the court with an appellate brief.

The facts are undisputed. The sole issue on appeal is whether the Kansas district court had jurisdiction to modify an Arizona child support order.

Gentzel was divorced from Williams in Maricopa County, Arizona, on August 17, 1994. In the decree of dissolution of marriage, Williams was ordered to pay $640 per month in child support.

Following the divorce, Gentzel and her children moved to Texas and Williams moved to Hutchinson, Kansas. Gentzel assigned the child support rights to the State of Texas, and the Texas Attorney General sought collection of Williams' child support arrearage. As of October 31, 1996, the Texas Attorney General figured Williams was in arrears in the amount of $17,613.

On December 19, 1996, in the Reno County District Court, the Kansas Department of Social and Rehabilitation Services filed a

notice of intent to apply for issuance of an income withholding order. The notice stated:

"That an interstate income withholding order is being requested on the basis of a support order from another jurisdiction, to wit Valerie Williams vs. Keith Williams, Case No. DR94-90048, in the Superior Court of the State of Arizona in and for the County of Maricopa, which has been registered in the Reno County District Court pursuant to K.S.A. 23-4,129."

The notice indicated that Williams could challenge the issuance of an income withholding order only for the grounds of mistake of fact, namely that he was not the person who owed the money, that the amount of support was not correct, that the amount in arrears was not correct, or that the amount to be withheld was greater than that permitted by law.

On January 15, 1997, the Reno County District Court issued an income withholding order against Williams. The order requested $800 per month in support — $640 per month for the current support and $160 per month for the $17,613 in arrears.

On January 17, 1997, in the Reno County District Court, Williams filed for an order staying the issuance of a proposed income withholding order, arguing that the amount of current support was not correct and the amount stated as due and owing was not correct. Williams requested the court to enter an order reflecting payments he made to Gentzel and establishing a child support payment consistent with the Kansas Child Support Guidelines.

At a hearing on February 21, 1997, SRS did not object to the jurisdiction of the Reno County District Court over the matter but requested a continuance to figure Williams' actual earnings and to allow the Texas Attorney General time to verify Williams' affidavit of alleged child support payments. The district court found that it had continuing exclusive jurisdiction over the matter and then continued the matter pursuant to the request of SRS.

On March 21, 1997, the district court resumed the proceedings. SRS made an oral motion requesting the court to reconsider the finding that it had continuing exclusive jurisdiction. SRS argued that pursuant to the Uniform Interstate Family Support Act (UIFSA) as adopted by Kansas, K.S.A. 23-9,101 *et seq.*, the court did not have continuing exclusive jurisdiction under K.S.A. 23-

9,611(a) since all the parties were not in Kansas or that Williams, the petitioning party, was a resident of Kansas. SRS also argued that for similar reasons the court did not have jurisdiction to consider the matter under the requirements of the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B (1996 Supp.). The district court denied the oral motion by SRS and then reduced Williams' child support payment to $237 per month pursuant to the Kansas Child Support Guidelines and also $63 per month to be applied to the arrearage.

SRS appeals the district court's decision to assume jurisdiction over the child support order and to reduce Williams' child support payment.

SRS argues the district court did not have jurisdiction under the Interstate Income Withholding Act (IIWA), K.S.A. 23-4,105 *et seq.*, the UIFSA, or the FFCCSOA to modify the existing child support order entered by the Arizona court.

Whether the district court has jurisdiction is a question of law over which this court enjoys an unlimited standard of review. See *Carrington v. Unseld*, 22 Kan. App. 2d 815, 817, 923 P.2d 1052 (1996); *Grindsted Products, Inc. v. Kansas City Power and Light Co.*, 21 Kan. App. 2d 435, 437, 901 P.2d 20 (1995).

There are no reported Kansas cases addressing either IIWA, UIFSA, or FFCCSOA. As a result, the questions in this case present issues of first impression.

SRS filed its income withholding order pursuant to K.S.A. 23-4,129 of the Kansas IIWA. The IIWA provides the necessary avenue for Gentzel to enforce the Arizona child support order but does not provide the jurisdiction for Williams to modify the support order.

The objective of IIWA is to provide a quick and effective procedure for the withholding of income derived in Kansas to enforce support orders of other jurisdictions and by requiring that income withholding to enforce Kansas support orders be sought in other jurisdictions. K.S.A. 23-4,125(b).

The district courts of Kansas are expressly created by the Kansas Constitution and are given only such jurisdiction as may be provided by the legislature. Kan. Const. art. 3, § 6; *Thompson v. Amis,*

208 Kan. 658, 661, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972); *State v. Adams*, 2 Kan. App. 2d 135, 136-37, 576 P.2d 242, *rev. denied* 225 Kan. 845 (1978). The Kansas Legislature has clearly limited the jurisdiction of the district courts concerning interstate income withholding orders. K.S.A. 1997 Supp. 23-4,129(e) states that entry of an order pursuant to IIWA "shall not confer jurisdiction on the courts of this state for any purpose other than income withholding."

An obligor can request a hearing to contest a proposed income withholding order. However, the issues an obligor can raise at the hearing are limited. K.S.A. 23-4,131(b) provides that an obligor can raise only the following:

"(1) A mistake of fact that is not res judicata concerning the amount of current support owed or arrearage that had accrued, mistaken identity of the obligor or the amount of income to be withheld;

"(2) that the court or agency which issued the support order entered under K.S.A. 23-4,129 and amendments thereto lacked personal jurisdiction over the obligor.

"The burden shall be on the obligor to establish these defenses."

Modification of a child support order, even for justifiable grounds, is not one of the limited objections an obligor can raise regarding an interstate income withholding order. Consequently, the IIWA does not provide the necessary jurisdiction to address Williams' requested modification.

The Uniform Reciprocal Enforcement of Support Act of 1970 (URESA), K.S.A. 23-451 *et seq.*, was repealed by the Kansas Legislature effective July 1, 1995. In its place, the legislature adopted the UIFSA. In its model form, UIFSA was endorsed in 1993 by the National Conference of Commissioners on Uniform State Laws, the American Bar Association, and the United State Commission on Interstate Child Support. Oliphant, *Is Sweeping Change Possible? Minnesota Adopts the Uniform Interstate Family Support Act*, 21 Wm. Mitchell L. Rev. 989, 992-93 (1996). To further national uniformity regarding the enforcement of child support orders, Congress required that all states adopt UIFSA by January 1, 1998. 42 U.S.C. § 666(f) (1996 Supp.).

Both URESA and UIFSA were promulgated and intended to be used as procedural mechanisms for the establishment, modification, and enforcement of child and spousal support obligations. See *Thompson v. Kite*, 214 Kan. 700, Syl. ¶ 2, 522 P.2d 327 (1974). Under URESA, a state had jurisdiction to establish, vacate, or modify an obligor's support obligation even when that obligation had been created in another jurisdiction. The result was often multiple, inconsistent obligations existing for the same obligor and injustice in that obligors could avoid their responsibility by moving to another jurisdiction and having their support obligations modified or even vacated. See, *e.g., Burnworth v. Hughes*, 234 Kan. 69, 670 P.2d 917 (1983); *Dipman v. Dipman*, 6 Kan. App. 2d 844, 635 P.2d 1279 (1981).

An article in the Family Law Quarterly examined the improvement of UIFSA over URESA:

"How does the new Act differ from URESA? . . . Probably the most significant improvement offered by UIFSA is the elimination of the multiple-order system existing under URESA. Orders entered under URESA have been defined as additional to, and not replacements of, prior support orders. Thus, at any particular time, two or more orders covering the same child might exist with different levels of support set by each one. When combined with the general family law rule permitting modification of existing child support orders on the basis of changed circumstances, the resultant chaos and confusion is certainly understandable.

"By contrast, UIFSA adopts the concept of continuing, exclusive jurisdiction to establish and modify the levels of child support due a particular child. Thus, once a court or administrative agency enters a support decree with jurisdiction, it is the only body entitled to modify it so long as it retains continuing, exclusive jurisdiction under the Act. Another state, while required by UIFSA to enforce the existing decree, has no power under that Act to modify the original decree or enter a support order at a different level." Sampson and Kurtz, *UIFSA: An Interstate Support Act for the 21st Century*, 27 Fam. Law Qtrly. 85, 88 (1993).

UIFSA was designed to correct the problem of multiple support orders. See Hatamyar, *Critical Applications and Proposals for Improvement of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act*, 71 St. John's L. Rev. 1 (1997); Levy and Hynes, *Highlights of the Uniform Interstate Family Support Act*, 83 Ill. B. J. 647 (1995). UIFSA establishes a one-order system whereby all states adopting UIFSA are

required to recognize and enforce the same obligation consistently. A priority scheme is established for the recognition and enforcement of multiple existing support obligations.

Kansas has recognized jurisdiction in the district courts to modify a child support order of another state based on the common-law duty of a parent to support his or her child and on equity principles. See *Burnworth*, 234 Kan. 69; *Keller v. Guernsey,* 227 Kan. 480, 608 P.2d 896 (1980); *Boyce v. Boyce*, 13 Kan. App. 2d 585, 589, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989); *Warwick v. Gluck*, 12 Kan. App. 2d 563, Syl. ¶ 2, 751 P.2d 1042 (1988). However, with the imposition of UIFSA, the common law is modified to conform with the statutory law. See K.S.A. 77-109. Consequently, the specific and limited situations under UIFSA as to when Kansas district courts can modify other states' child support orders will control a case.

As stated earlier, a major difference between URESA and UIFSA is the concept of "continuing, exclusive jurisdiction." K.S.A. 23-9,205 provides that a state issuing a support order has continuing, exclusive jurisdiction as long the obligor, obligee, and the children reside therein or until each party consents for another state to modify the support order and assume continuing, exclusive jurisdiction.

K.S.A. 23-9,611 addresses the modification of foreign child support orders. It provides, in part:

"(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if, after notice and hearing, it finds that:

"(1) The following requirements are met:

(A) The child, the individual obligee and the obligor do not reside in the issuing state;

. (B) a petitioner who is a nonresident of this state seeks modification; and

(C) the respondent is subject to the personal jurisdiction of the tribunal of this state; or

"(2) an individual party or the child is subject to the personal jurisdiction of the tribunal and all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this state may modify the support order and assume continuing, exclusive jurisdiction over the order."

Applying K.S.A. 23-9,611 to the case at bar reveals how the district court erred in assuming jurisdiction to modify the Arizona

child support order. The district court correctly held that Arizona lost continuing, exclusive jurisdiction when all the parties and children left the state. However, that does not automatically give Kansas continuing, exclusive jurisdiction merely because Williams is a Kansas resident. First, Williams fails the elements test of K.S.A. 23-9,611(a)(1). Since he resides in Kansas, he does not meet the qualification of "a petitioner who is a nonresident of this state seeks modification" under K.S.A. 23-9,611 (a)(1)(B). Second, because Gentzel is a resident of Texas, Kansas would have no personal jurisdiction over her unless she has contacts with Kansas or is served with process in Kansas. Further, the record is devoid of any evidence under K.S.A. 23-9,611(a)(2) that both Gentzel and Williams consented to a modification in the Kansas courts.

Does Williams have recourse? If he wishes to have the child support order modified, he must pursue the matter in Texas. A Texas forum would meet all the elements of K.S.A. 23- 9,611(a)(1). See Oliphant, 21 Wm. Mitchell L. Rev. at 1068-69; Hatamyar, 71 St. John's L. Rev. at 61.

Had Williams filed an appellate brief, concerns of unfairness would surely abound. However, the drafters of the UIFSA contemplated that type of problem and decided the burden falls on the party seeking the modification.

"[ § 611 (a)(1) or K.S.A. 23-9,611(a)(1)] contemplates that the issuing state has lost continuing, exclusive jurisdiction and that the obligee may seek modification in the obligor's state of residence, or that the obligor may seek a modification in the obligee's state of residence. This restriction attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local court to the marked disadvantage of the other party. For example, an obligor visiting the children at the residence of the obligee cannot be validly served with citation accompanied by a motion to modify the support order. Even though such personal service of the obligor in the obligee's home state is consistent with the jurisdictional requisites of Burnham v. Superior Court, 495 U.S. 604 (1990), the motion to modify does not fulfill the requirement of being brought by "a [petitioner] who is a nonresident of this State. . . ." The obligee is required to make that motion in a state other than that of his or her residence which has personal jurisdiction over the obligor. . . . Similarly, fairness requires that an obligee seeking to modify or modify and enforce the existing order in the state of residence of the obligor will not be subject to a cross-motion

to modify custody or visitation merely because the issuing state has lost its continuing, exclusive jurisdiction over the support order." 27 Fam. Law Qtrly. at 163.

The same result is reached through an application of the FFCCSOA, adopted by Congress in 1994. FFCCSOA is similar to UIFSA both in terms of structure and intent. FFCCSOA similarly obligates states to enforce, according to its terms, a child support order issued by another state which is made consistent with the Act's jurisdiction and due process standards. 28 U.S.C. § 1738B(a); see *Kelly v. Otte*, 123 N.C. App. 585, 589-90, 474 S.E.2d 131, *rev. denied* 345 N.C. 180, 479 S.E.2d 204 (1996).

Under 28 U.S.C. § 1738B(a) and (c), if a child support order is made by a court that had jurisdiction and gave notice and an opportunity for hearing to the parties, a court of another state cannot modify the order except as provided. The major difference with UIFSA is that FFCCSOA does not contain the "nonresident petitioner" restriction on modification jurisdiction. Modification under FFCCSOA of a valid order is only allowed if: (1) neither the child(ren) nor any of the parties remain in the issuing state and the forum state has jurisdiction over the parties; or (2) all parties have consented to the jurisdiction of the forum state to modify the order. 28 U.S.C. § 1738B(e) and (i).

Williams could argue that he has met the requirements of 28 U.S.C. § 1738B(e)(1) and (2)(A) since neither the child(ren) nor any of the parties remain in Arizona, and Kansas has jurisdiction over the parties under the common-law jurisdiction (subject matter jurisdiction) to decide child support matters. See, *e.g., Boyce*, 13 Kan. App. 2d at 589.

28 U.S.C. § 1738B(i) allows the party seeking to modify the order to register the order "in a State with *jurisdiction* over the nonmovant for the purpose of modification." (Emphasis added.) Interpreting the word "jurisdiction" in 28 U.S.C. § 1738B(i) to mean both personal jurisdiction and subject matter jurisdiction to modify would avoid the anomaly of reaching different results under FFCCSOA and UIFSA. Subject matter jurisdiction is the power of the court to hear and decide a particular type of action. On the other hand, personal jurisdiction is the power which a court has

over the defendant's person and which is required before a court can enter a personal or in personam judgment. See *Carrington*, 22 Kan. App. 2d at 817.

As previously explained, under UIFSA, even if a movant could obtain personal jurisdiction over a nonresident with service of process while temporarily in movant's state, see *Burnham v. Superior Court of Cal., Marin County*, 495 U.S. 604, 620, 109 L. Ed. 2d 631, 110 S. Ct. 2105 (1990), the court would still not have subject matter jurisdiction. Additionally, this case was filed by SRS under IIWA, which clearly provides that entry of an order shall not confer jurisdiction on the Kansas courts for any purpose other than income withholding. K.S.A. 23-4,129(e).

Therefore, since Kansas would not have subject matter jurisdiction to modify the Arizona child support order under UIFSA, Kansas should not have "jurisdiction over the nonmovant for the purpose of modification" under FFCCSOA either. This construction harmonizes the results attained by FFCCSOA and UIFSA and furthers uniformity in interstate enforcement of child support orders.

For the reasons given above, we vacate the order modifying the child support order and remand this matter to the district court for proceedings consistent with this opinion.

Reversed and remanded.